UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| JEFFREY SAYWARD and KIM SAYWARD,<br><br>Plaintiffs,<br>v.<br><br>ERIC J. SAX, M.D.,<br><br>and<br><br>MAINEHEALTH,<br><br>and<br><br>SPECTRUM HEALTHCARE PARTNERS, P.A.,<br><br>Defendants. | Civil Action No. 2:26-cv-00258-JAW |

**DEFENDANTS MAINEHEALTH, ERIC J. SAX, M.D., AND SPECTRUM HEALTHCARE PARTNERS, P.A'S JOINT MOTION TO DISMISS**

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendants Eric J. Sax, M.D. ("Dr. Sax"), MaineHealth, and Spectrum Healthcare Partners, P.A. ("Spectrum") (collectively the "Defendants") hereby move to dismiss the Complaint on the grounds that Plaintiffs have failed to comply with the prelitigation requirements of the Maine Health Security Act (the "MHSA" or the "Act"). The MHSA is a comprehensive statutory system of substantive rights and obligations, including prelitigation confidentiality of claims, applying to all statutorily-defined claims against health care providers in Maine, including all claims asserted in this action. 24 M.R.S. §§ 2501 *et seq*. It applies to claims filed in federal court solely under diversity jurisdiction, as this action. *Houk v. Furman*, 613 F. Supp. 1022, 1027 (D. Me. 1985); *Hewitt*, 39 F. Supp. 2d 84, 87 (D. Me. 1999); *Demmons v. Tritch*, No. 06-140-B-W, 2007 U.S. Dist. LEXIS

17501, at *11-12 (D. Me. Mar. 1, 2007); *Henderson v. Laser Spine Inst., LLC*, 815 F. Supp. 2d 353, 381-83 & n. 23 (D. Me. 2011); *Badger v. Correct Care Sols.*, No. 1:15-cv-00517-JAW, 2016 U.S. Dist. LEXIS 29822, at *3, 5 (D. Me. Mar. 7, 2016).

Alternatively, Defendants respectfully request that this Court abstain from exercising jurisdiction under the *Burford* federal abstention doctrine.[1]

## BACKGROUND

On May 15, 2026, Plaintiffs Jeffrey and Kim Sayward filed their Complaint against Dr. Sax, MaineHealth, and Spectrum. *See* Compl., Doc. 1. The Complaint was filed in this Court based on diversity jurisdiction. *Id.* To that end, Plaintiffs allege that they are "citizens of and domiciled in the State of Florida," Dr. Sax is a "citizen of and domiciled in the Commonwealth of Massachusetts," and that MaineHealth and Spectrum are "corporation[s] incorporated in and with a principal place of business in the State of Maine." *Id.* ¶¶ 2-5; *see also* Doc. 3 (Plaintiffs' Rule 7.1 Disclosure Statement). Plaintiffs' Complaint arises out of radiology imaging that was obtained and evaluated on May 29, 2023. Compl. ¶¶ 1, 12, 15-16. Specifically, the Complaint alleges negligence/medical malpractice against Dr. Sax, vicarious liability against MaineHealth and Spectrum, and loss of consortium against all Defendants. *Id.* ¶¶ 30-40. Plaintiffs allege that "a substantial part of the events or omissions giving rise to this action occurred in the State of Maine . . . ." *Id.* ¶ 9. Despite conceding that this is a medical malpractice action, *id.* ¶ 1, Plaintiffs contend that the action is not subject to the rights and obligations of the Maine Health Security Act, i*d.* ¶ 10.

---

[1] *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943).

## LEGAL STANDARD

"To survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), a complaint must provide a short and plain statement of the claim showing that the pleader is entitled to relief, with enough factual detail to make the asserted claim plausible on its face." *Legal Sea Foods, LLC v. Strathmore Ins. Co.*, 36 F.4th 29, 33 (1st Cir. 2022) (quotation marks omitted). In considering the sufficiency of a complaint, it is appropriate for the court to review not only a plaintiff's allegations, but also facts "gleaned from documents incorporated by reference into the complaint, matters of public record, and facts susceptible to judicial notice." *Haley v. City of Boston*, 657 F.3d 39, 46 (1st Cir. 2011).

A failure to comply with the prelitigation requirements of MHSA "constitutes a bar to a civil action." *Kidder v. Richmond Area Health Ctr., Inc.*, 595 F. Supp. 2d 139, 142 (D. Me. 2009) (citing *Brown v. Augusta Sch. Dep't*, 963 F. Supp. 39, 40-41 (D. Me. 1997); *Powers v. Planned Parenthood of N. New England*, 677 A.2d 534, 537-38 (Me. 1996)); *see also Badger v. Correct Care Sols.*, 2016 U.S. Dist. LEXIS 29822, at *3 ("While this Court might have diversity jurisdiction over Plaintiff's state law malpractice action, unless and until Plaintiff has complied with the state law pre-litigation screening procedures, Plaintiff cannot proceed on his malpractice action in this Court.") (citing *Henderson*, 815 F. Supp. 2d at 381-82; *Kidder*, 595 F. Supp. 2d at 142; *Hewett.*, 39 F. Supp. 2d at 87)). As such, "[w]hen a plaintiff fails to comply with the MHSA's [prelitigation] requirements, 'the proper step for the court . . . is to dismiss the action.'" *Stewart v. Mason*, No. 1:21-cv-00321-LEW, 2022 U.S. Dist. LEXIS 56992, at *3-4 (D. Me. Mar. 29, 2022) (quoting *Hill v. Kwan*, 2009 ME 4, ¶ 8, 962 A.2d 963, 966).

Furthermore, a statute of limitations defense can be considered on a motion to dismiss under Fed. R. Civ. P. 12(b)(6) "provided that the facts establishing the defense [are] clear on the face of

the plaintiff's pleadings." *Santana-Castro v. Toledo-Davila*, 579 F.3d 109, 113-14 (1st Cir. 2009) (quotation and citation omitted); *Garcia-Gesualdo v. Honeywell Aerospace of P.R.*, 135 F.4th 10, 16 (1st Cir. 2025); *Alvarez-Mauras v. Banco Popular of Puerto Rico*, 919 F.3d 617, 628 (1st Cir. 2019) ("[I]t is well settled in this circuit that a motion to dismiss may be granted on the basis of an affirmative defense, such as the statute of limitations, as long as the facts establishing the defense are clear on the face of the plaintiff's pleadings." (quotation and citation omitted)). "The key is whether the complaint and any documents that properly may be read in conjunction with it show beyond doubt that the claim asserted is out of time." *Rodi v. S. New England Sch. of L.*, 389 F.3d 5, 17 (1st Cir. 2004). Specifically, "[w]here the dates included in the complaint show that the limitations period has been exceeded and the complaint fails to 'sketch a factual predicate' that would warrant the application of either a different statute of limitations period or equitable estoppel, dismissal is appropriate." *Santana-Castro*, 579 F.3d at 114.

## ARGUMENT

### I. Plaintiffs' Complaint must be dismissed because they have failed to comply with the Maine Health Security Act's notice and panel requirements.

Plaintiffs' Complaint is a medical malpractice action alleging professional negligence against health care providers. In Maine, all actions for professional negligence brought against healthcare providers are both defined by and governed by the Maine Health Security Act. *Henderson*, 815 F. Supp. 2d at 382 (recognizing that the provisions of the MHSA have been interpreted broadly to apply "'to *all* actions for professional negligence against a health care provider or practitioner'" and holding that the Act governs all of the plaintiff's claims) (quoting *Saunders v. Tishner*, 2006 ME 94, ¶ 12, 902 A.2d 830, 833) (emphasis in original); *Brand v. Seider*, 697 A.2d 846, 857 (Me. 1997) (with enactment of the MHSA the Maine Legislature intended to "fully occupy the field of claims brought against health care providers"); see 24

M.R.S. §§ 2502(1-A), (2), (3), (6), (7) & 2851(2). The provisions of the Act provide the statute of limitations period for medical malpractice actions, the mechanisms for tolling the limitations period, and mandates that claimants/plaintiffs file a notice of claim and complete the panel hearing process, under the statute's mandatory confidentiality provisions, before an action can be filed in court. *See* 24 M.R.S. §§ 2853(1), 2859, 2902, 2903.

Plaintiffs attempt to avoid the MHSA by claiming that the Supreme Court's decision in *Berk v. Choy*, 607 U.S. 187 (2026) holds that it should not apply in federal diversity actions. *Berk* does not so hold. *Berk*'s holding, relieving the plaintiff from Delaware's heightened pleading requirement involving submission of an expert affidavit with malpractice allegations, does not extend to Maine's comprehensive prelitigation scheme. As will be detailed below, the MHSA provides a comprehensive statutory scheme that governs all medical malpractice actions in Maine; this Court has already affirmatively decided the issue of whether the MHSA is applied in federal diversity actions; and the *Berk* decision does not disrupt this precedent. Because Plaintiffs have failed to comply with the pre-litigation requirements of the MHSA before filing this diversity action in federal court and the statute of limitations period has run, the Complaint must be dismissed.

A. <u>The Maine Health Security Act provides a comprehensive statutory scheme that governs all actions for professional negligence in Maine.</u>

In Maine, actions brought against medical providers alleging professional negligence are a hybrid of statute and common law. "The Maine Health Security Act, 24 M.R.S. § 2501 *et seq*. codifies Maine's medical malpractice system." *Gideon Asen LLC v. Glessner*, 583 F. Supp. 3d 242, 244 (D. Me. 2022). The Act is a comprehensive scheme of administrative rights and obligations which the Maine Legislature intended to "'fully occupy the field of claims brought

against health care providers . . . .'" *Brand*, 697 A.2d at 857 (quoting *Dutil v. Burns*, 674 A.2d 910, 911 (Me. 1996)); *see also Saunders*, 2006 ME 94, ¶ 13, 902 A.2d at 833-34.

The MHSA expressly defines several fundamental terms of a medical malpractice action. 24 M.R.S. § 2502. For example,

> "Health care provider" means any hospital, clinic, nursing home or other facility in which skilled nursing care or medical services are prescribed by or performed under the general direction of persons licensed to practice medicine, dentistry, podiatry or surgery in this State and that is licensed or otherwise authorized by the laws of this State. . . .

*Id.* § 2502(2).

> "Action for professional negligence" means any action for damages for injury or death against any health care provider, its agents or employees, or health care practitioner or the health care practitioner's agents or employees, whether based upon tort or breach of contract or otherwise, arising out of the provision or failure to provide health care services.

*Id.* § 2502(6).

> "Professional negligence" means that:
>
> > A. There is a reasonable medical or professional probability that the acts or omissions complained of constitute a deviation from the applicable standard of care by the health care practitioner or health care provider charged with that care; and
> > B. There is a reasonable medical or professional probability that the acts or omissions complained of proximately caused the injury complained of.

*Id.* § 2502(7).

Pursuant to the MHSA, every medical malpractice case brought in Maine must be heard by the prelitigation panel before court commencement. 24 M.R.S. § 2903(1)(B); § 2854(1). Section 2851 expressly states that the purpose of the MHSA's prelitigation panel hearing process is two-fold: (A) "[t]o identify claims of professional negligence which merit compensation and to encourage early resolution of those claims prior to commencement of a lawsuit; and" (B) "[t]o

identify claims of professional negligence and to encourage early withdrawal or dismissal of nonmeritorious claims." 24 M.R.S. § 2581(1).

The Maine Law Court has recognized that "[t]he prelitigation panel created by the [MHSA] is an agency of the court . . . ." *Hill*, 2009 ME 4, ¶ 12, 962 A.2d at 967. As such, the formation and operation of the panel is all done under the auspices of the state court. Section 2852 requires the Chief Justice of the Superior Court to "recommend to each clerk of the Superior Court the names of retired or active retired justices and judges, persons with judicial experience and other qualified persons to serve on screening panels" and the clerk then places those names "on a list from which the Chief Justice of the Superior Court will choose a panel chair . . . ." *Id.* § 2852(1). Upon receipt of a notice of claim under Section 2853, the Chief Justice must appoint a person from the list to serve as the chair of the panel. *Id.* § 2852(2)(A). Under the auspices of the Chief Justice, the panel chair must then select "2-3 additional panel members" from "lists of health care practitioners, health care providers and attorneys recommended by the professions involved to serve on screening panels" maintained by the clerk. *Id.* § 2852(1), (2)(B). "The panel, through the chair, has the same subpoena power as exists for a Superior Court Judge." *Id.* § 2852(5). Additionally, the panel chair "may permit reasonable discovery" and "may rule on requests regarding discovery or may allow the parties to seek a ruling in the Superior Court . . . ." *Id.* § 2852(6).

The MHSA requires that a notice of claim be filed and served. 24 M.R.S. § 2853(1). Specifically, the Act provides that

> [a] person may commence an action for professional negligence by:
>
> > A. Serving a written notice of claim, setting forth, under oath, the professional negligence alleged and the nature and circumstances of the injuries and damages alleged, on the person accused of professional

> negligence. The notice of claim must be filed with the Superior Court within 20 days after completion of service; or
>
> B. Filing a written notice of claim, setting forth, under oath, the professional negligence alleged and the nature and circumstances of the injuries and damages alleged, with the Superior Court. The claimant must serve the notice of claim on the person accused of professional negligence. The return of service must be filed with the court within 90 days after filing the notice of claim.
>
> Service must be made in accordance with the Maine Rules of Civil Procedure, Rule 4.

*Id.* § 2853(1). After filing the required notice of claim, the claimant is required to participate in a panel hearing after which the panel is required to make its findings on the standard of care and causation. *Id.* §§ 2854, 2855.

Sections 2853(1-A) and 2857 of the MHSA make clear that all aspects of the panel process are confidential. Section 2853(1-A) addresses filings and clearly states that "[t]he notice of claim and all other documents filed with the court in the action for professional negligence during the prelitigation screening process are confidential." Section 2857 addresses the panel proceedings and expressly states "all proceedings before the panel, including its final determinations, must be treated in every respect as private and confidential by the panel and the parties to the claim," except when the Act expressly provides otherwise. 24 M.R.S. § 2857(1). Furthermore, the Act expressly provides that

> The deliberations and discussion of the panel and the testimony of any expert, whether called by any party or the panel, shall be privileged and confidential, and no such person may be asked or compelled to testify at a later court proceeding concerning the deliberations, discussions, findings or expert testimony or opinions expressed during the panel hearing, unless by the party who called and presented that nonparty expert, except such deliberation, discussion and testimony as may be required to prove an allegation of fraud.

*Id.* § 2857(2). Health care providers greatly rely on this substantive right of confidentiality embedded within the MHSA's statutory scheme. It allows providers to engage in open and

candid evaluations of potential claims without fear that disclosures or panel discussions will be used against them in a subsequent trial. It is also a critical reputational protection, in this highly specialized field of professional conduct and Hippocratic Oaths, against claims that prove to be meritless.

Sections 2856(1)(B)-(C) and 2858 address the admissibility and effect of the panel findings. Unanimous panel findings "are admissible in any subsequent court action for professional negligence against the person accused of professional negligence by the claimant based on the same set of facts upon which the notice of claim was filed." 24 M.R.S. § 2857(1)(B)-(C). Thus, in claims where there are unanimous panel findings, these provisions vest an evidentiary right in the prevailing party that would not otherwise exist. Additionally, Section 2858, addressing the effect of the panel findings, impacts the parties' obligations by mandating that they negotiate payment or release the claim. The provision provides that:

> [1] If the unanimous findings of the panel as to section 2855, subsections 1 and 2 are in the affirmative, the person accused of professional negligence must promptly enter into negotiations to pay the claim or admit liability. If liability is admitted, the claim may be submitted to the panel, upon agreement of the claimant and person accused, for determination of damages. If suit is brought to enforce the claim, the findings of the panel are admissible as provided in section 2857.
>
> [2] If the unanimous findings of the panel as to either section 2855, subsection 1 or 2, are in the negative, the claimant must release the claim or claims based on the findings without payment or be subject to the admissibility of those findings under section 2857, subsection 1, paragraph B.

As such, the statutory scheme of the MHSA has rights and obligations inherent within it.

Importantly, the MHSA provides the statute of limitations for medical malpractice suits and the mechanisms for tolling. "Actions for professional negligence must be commenced within 3 years after the cause of action accrues. For purposes of this section, a cause of action accrues on the date of the act or omission giving rise to the injury." 24 M.R.S. § 2902. Furthermore, the

statute of limitations "is tolled from the date upon which notice of claim is served or filed in Superior Court until 30 days following the day upon which the claimant receives notice of the findings of the panel." *Id.* § 2859.

Finally, the Act provides the time period for commencement of an action for professional negligence. "No action for professional negligence may be commenced until the plaintiff has: (A) [s]erved and filed written notice of claim in accordance with section 2853; (B) [c]omplied with the provisions of [the mandatory panel hearing process]; and (C) [d]etermined that the time periods provided in section 2859 have expired." 24 M.R.S. § 2903(1).

B. <u>This Court has established that the prelitigation system of the MHSA applies to medical malpractice claims filed in federal court on the basis of diversity jurisdiction, and the *Berk* decision does not disrupt that precedent or the Court's analysis of the issue.</u>

1. *The District of Maine has long held that the pre-litigation requirements of the MHSA apply to medical malpractice claims in federal diversity actions.*

"Authoritative case law makes clear that federal courts sitting in diversity are obligated to apply state law unless applicable federal procedural rules are sufficiently broad to control a particular issue before the court." *Daigle v. Me. Med. Ctr.*, 14 F.3d 684, 689 (1st Cir. 1994) (citing *Walker v. Armco Steel Corp.*, 446 U.S. 740, 749 (1980) and *Hanna v. Plumer*, 380 U.S. 460, 470-71 (1965)); *see also Berk v. Choy*, 607 U.S. 187, 192 (2026) ("The Rules of Decision Act directs federal courts to apply state substantive law, leaving federal law to cover the rest."); *Shady Grove Orthopedic Assocs. P.A. v. Allstate Ins. Co.*, l559 U.S. 393, 398 ("We must first determine whether [the Federal Rule of Procedure] answers the question in dispute. If it does, it governs . . . unless it exceeds statutory authorization or Congress's rulemaking power.") (citations omitted).

This Court has expressly and consistently held that the MHSA, including the requirements of filing a notice of claim and completion of the panel process, apply in diversity actions filed in

federal court. *See Houk*, 613 F. Supp. at 1027; *Hewitt*, 39 F. Supp. 2d at 87; *Demmons*, 2007 U.S. Dist. LEXIS 17501, at *11-12; *Henderson*, 815 F. Supp. 2d at 381 n. 23; *Badger*, 2016 U.S. Dist. LEXIS 29822, at *3, 5.

In *Houk*, this Court considered an earlier version of the Act which mandated that a plaintiff file a prelitigation notice. *Houk*, 613 F. Supp. at 1026-27. The plaintiff in that case attempted to distinguish the notice requirement from other states which required medical malpractice claims to be submitted to a screening panel and argued that the notice requirement was "purely procedural and [did] not apply in a federal diversity action under the Rules of Decision Act." *Id.* at 1026. The Court rejected the argument and held that the prelitigation notice requirement must be applied in diversity actions. *Id.* at 1027. It found that the "requirement that a notice of claim be served upon a malpractice defendant within the applicable Maine period of limitations, as a prerequisite to the right to recover in a court action, renders the notice-of-claim requirement . . . an integral part of the Maine statute of limitations for malpractice actions," that "[n]o federal rule directly conflict[ed] with the Maine notice-of-claim requirement," and that refusing to apply the requirement "would produce an inequitable administration of Maine law as between resident and nonresident plaintiffs in malpractice actions. . . ." *Id.* at 1027. In its reasoning, the Court quoted the Supreme Court's reasoning in *Ragan v. Merchants Transfer & Warehouse Co.*, 337 U.S. 530[2] stating that

> [s]ince [the] cause of action is created by local law, the measure of it is to be found only in local law. It carries the same burden and is subject to the same defenses in the federal court as in the state court . . . . It accrues and comes to an end when local law so declares . . . Where local law qualifies or abridges it, the federal court must follow suit. . . ."

[2] *Houk* noted that the case was analogous to the *Ragan* decision, which held that a Kansas statute, as an integral part of the statute of limitations, and not Federal Rule of Civil Procedure 3, "controlled the questions of whether the action was timely brought." *Id.* at 1026; *see also Ragan*, 337 U.S. at 532-534. That same reasoning still applies here.

*Id.* (quoting *Ragan*, 337 U.S. at 533).

The Court also analogized the pre-litigation notice requirement to the service-of-summons requirement at issue in the Supreme Court's decision in *Walker v. Armco Steel Corp. Id.* at 1027. In *Walker*, the Supreme Court considered whether Federal Rule of Civil Procedure 3 or an Oklahoma statute, which provided when an action was deemed commenced for purposes of the statute of limitations, governed in a diversity action. *Walker*, 446 U.S. at 741-744. The *Walker* court clearly stated that the "first question [of the analysis] must . . . be whether the scope of the Federal Rule is sufficiently broad to control the issue before the Court." *Id.* at 750. In answering this question, "[t]he Federal Rules should be given their plain meaning" and if the Federal Rule is sufficiently broad to answer the disputed issue, it governs unless it goes beyond the Rules Enabling Act or constitutional bounds. *Id.* at 750 n.9; *see also Hanna*, 380 U.S. at 463-64. However, if there is "no Federal Rule which covers the point in dispute . . . the policies behind *Erie* and *Ragan* control the issue . . . ." *Walker*, 446 U.S. at 752. In applying the analysis, the Supreme Court in *Walker* first asked whether Rule 3 controlled the issue of when an action was deemed commenced for purposes of the statute of limitations. *Id.* at 750-52. It found that "Rule 3 simply states that "'a civil action is commenced by filing a complaint with the court'" and that there is "no indication that the Rule was intended to toll the state statute of limitations much less that it purported to displace state tolling rules for purposes of state statute of limitations." *Id.* at 750-751. The Supreme Court further found that "in diversity actions Rule 3 governs the date from which various timing requirements of the Federal Rules begin to run, but does not affect state statutes of limitations." *Id.* at 751. There being no direct conflict between the Federal Rule and the state law, the Supreme Court applied the state service requirement and explained that

failure to do so "would be an 'inequitable administration' of the law." *Id.* at 752-53 (citing *Hanna*, 380 U.S. at 468). It reasoned that

> There is simply no reason why, in the absence of a controlling federal rule, an action based on state law which concededly would be barred in the state courts by the state statute of limitations should proceed through litigation to judgment in federal court solely because of the fortuity that there is diversity of citizenship between the litigants. The policies underlying diversity jurisdiction do not support such a distinction between state and federal plaintiffs, and *Erie* and its progeny do not permit it.

*Id.* at 753.

Relying on and applying the Supreme Court's analysis and reasoning in *Ragan* and *Walker*, *Houk* held that the "pre-litigation notice requirement, as an integral part of the statute of limitations, is intimately bound up with the rights and obligations of the parties to Maine medical malpractice claims, and therefore must be applied in . . . diversity action[s]." *Houk*, 613 F. Supp. at 1027 (citation omitted). In *Hewitt*, this Court applied the reasoning in *Houk* and held that the current pre-litigation notice and panel hearing system requirements apply in actions brought in Federal Court under diversity jurisdiction. *Hewitt*, 39 F. Supp. 2d at 87. The Court reasoned that like the pre-litigation notice, the "[s]ubmission of claims to a pre-litigation screening panel clearly is 'intimately bound up' with the rights and obligations of the parties to Maine medical malpractice claims." *Id.* at 87 (quoting *Houk*, 613 F. Supp. at 1027). This Court reaffirmed *Houk* and *Hewitt* in its decision in *Henderson*, 815 F. Supp. 2d at 381 n. 23.

Therefore, under this Court's precedent, a plaintiff cannot proceed on a medical malpractice action in federal court unless and until they have complied with the MHSA. *See Henderson*, 815 F. Supp. 2d at 381-82; *Kidder*, 595 F. Supp. 2d at 142; *Hewett*, 39 F. Supp. 2d at 87. "When a plaintiff fails to comply with the MHSA's screening requirements, the proper step for the court is

to dismiss the action." *Stewart*, 2022 U.S. Dist. LEXIS 56992, at *3; *see also Demmons*, 2007 U.S. Dist. LEXIS 17501, at *11-12.

*2. The Berk decision does not disrupt the District of Maine's precedent or alter the analysis used to determine whether the MHSA's pre-litigation requirements apply in federal diversity actions.*

Plaintiffs contend that, following the Supreme Court's decision in *Berk v. Choy,* the MHSA no longer applies in medical malpractice cases filed in federal court under diversity jurisdiction. However, *Berk* is distinguishable from the present case, and the decision did not alter the *Walker* analysis relied upon in *Houk*.

In *Berk*, the Supreme Court considered whether a Delaware law, which required allegations in complaints for medical malpractice to be accompanied by an affidavit of merit, applied in federal diversity cases. *Berk*, 607 U.S. 187. The state law provided that "[n]o health-care negligence lawsuit shall be filed in this State unless the complaint is accompanied by [a]n affidavit of merit as to each defendant signed by an expert witness . . . stating that there are reasonable grounds to believe that there has been health-care medical negligence committed by each defendant." 18 Del. Code Ann. § 6853(a)(1); *see also Berk*, 607 U.S. at 190. The statute permitted a plaintiff, with "good cause" to file a motion for an extension of time to file the affidavit, but the motion had to be filed "before or when [they] file the complaint." *Berk*, 607 U.S. at 190 (citing 8 Del. Code Ann. § 6853(a)(2)).

The Supreme Court held that the Delaware statue was displaced by Federal Rule of Civil Procedure 8 and therefore did not apply to diversity cases in federal court. *Id.* at 199-200. The Court began its analysis by asking whether the Federal Rule "answers the question in dispute." *Id.* at 192 (quoting *Shady Grove*, 559 U.S. at 398). It determined that Rule 8 "prescribes the information a plaintiff must present about the merits of [their] claim at the outset of litigation: 'a

short and plain statement of the claim showing that [they are] entitled to relief.'" *Id.* at 193. The Delaware statute addressed the same issue and imposed a different standard: requiring evidence of the merits of the claim. *Id.* at 194-95. The Court reasoned that "[b]y requiring no more than a statement of the claim, Rule 8 establishes 'implicitly, but with unmistakable clarity,' that evidence of the claim is *not* required." *Id.* at 187 (quoting *Hanna*, 380 U.S. at 470) (emphasis in original). Upon determining that the Delaware statute and Rule 8 conflicted because they answer the same question, the Court moved to the second step in its analysis: whether Rule 8 is valid under the Rules Enabling Act and found that Rule 8 was valid because it "'really regulates procedure.'" *Id.* at 198-99. Because the state and federal rules answered the same questions and the Federal Rule was valid, the analysis ended there – the state law mandating a heightened burden of pleading on certain claims was displaced by the Federal Rule of pleading and could not be applied in federal court.

This case is different. *Berk* does not address, nor categorically preclude in a diversity action, the application of a comprehensive state legislative scheme such as the MHSA. The MHSA defines a category of claims, intending to fully occupy the field [§§ 2502 & 2851(2)]; and establishes rights and obligations regarding i) confidentiality [§§ 2853(1-A) & 2857], ii) notice of claim [§§ 2853], iii) discovery and hearing on claims before a state court agency (the prelitigation panel) [§§ 2852, 2854-2858]; iv) and a decision on the merits by the state court agency (the panel) with statutorily-prescribed findings and carrying statutorily-defined mandates [§§ 2855-2858]. The Delaware state law at issue in *Berk* does not set up a state court agency to determine the merits of claims – claims which now carry both a statutory definition [§ 2502(7)] and a statutory mandate for findings on a statutory burden of proof [§ 2855].

*Berk* does not announce a whole new analysis for determining when a state law applies in federal court. First, the affidavit of merit considered in *Berk* is fundamentally different from the MHSA's comprehensive scheme of administrative rights and obligations. Delaware's affidavit requirement expressly required plaintiffs to file evidence of the merits of their claim along with their complaint. The statute provided that a plaintiff could not sue for medical malpractice unless an affidavit of merit "accompanied" the complaint. Thus, the Delaware law requiring an affidavit of merit is a pleading requirement and nothing more. Conversely, in this case, the MHSA is comprehensive statutory scheme of administrative rights and obligations and a state court agency system of administration over a statutorily-defined set of state claims governed by state law, all operating under the auspices of the state court. As discussed above in Section I(A), the MHSA defines professional negligence and what constitutes an action for professional negligence, provides for a three-year statute of limitations, provides for how the limitations period is tolled, creates confidentiality and evidentiary rights, impacts certain obligations of the parties, and establishes prelitigation panels as state court agencies. Clearly, the MHSA's reach and affect go far beyond Delaware's affidavit pleading requirement – in fact it "fully occup[ies] the field of claims brought against health care providers . . . ." *Brand*, 697 A.2d at 857 (internal quotation omitted).

Moreover, unlike the affidavit pleading requirement, the MHSA's prelitigation panel and notice of claim mandates do not implicate Federal Rule 8. The Delaware law required plaintiffs to file evidence of their claim rather than just the short and plain statement of the claim sufficient under Rule 8. Here, neither the notice of claim nor panel hearing process mandated under the MHSA require, or even suggest, the type of "information a plaintiff must present about the

merits of [their] claim at the outset of litigation" discussed in *Berk*. *Berk*, 670 U.S. at 193; 24 M.R.S. §§ 2853(1), 2854, 2855, 2903.

Second, the analysis used by this Court in *Houk*, and reaffirmed in *Hewitt* and *Henderson*, is consistent with *Berk*, and remains good law. As detailed above in Section B(1), the *Houk* decision relied upon the Supreme Court's analysis and reasoning in *Walker*. Under that analysis, courts begin the analysis by determining whether the state law is contrary to a Federal Rule by first asking whether the scope of the Federal Rule is sufficiently broad to control the issue before the Court. *Walker*, 446 U.S. at 750. The analysis in *Berk* began with the very same inquiry, though worded slightly differently – does the state law and Federal Rule attempt to answer the same question. *Berk*, 607 U.S. at 192; *see also id.* at 200-201 (Jackson, J., concurring) (explaining that the "nub of the conflict inquiry is to determine whether the State's requirement is, in fact, contrary to a Federal Rule" and recognizing that the "central inquiry" has been expressed in various ways over the years). With regard to the prelitigation requirements of the MHSA, this Court has already answered that question and held that there is no direct conflict with a Federal Rule. *See Houk*, 613 F. Supp. at 1027; *Hewitt*, 39 F. Supp. 2d at 87; *Henderson*, 815 F. Supp. 2d at 381 n. 23.

*Berk* does not compel a different conclusion here. Section 2903 of the MHSA provides that "no action for professional negligence may be commenced until the plaintiff has" complied with the notice of claim requirement [under § 2853(1)], complied with the panel mandate, and confirmed that the tolling period of the statute of limitations has expired. Importantly, Sections 2859 and 2902 are also implicated because they establish the statute of limitations and tolling rules and are directly tied to the mandate of Sections 2853(1) and 2903. Section 2902 states that "[a]ctions for professional negligence must be commenced within 3 years after the cause of

action accrues . . . [which is] the date of the act or omission giving rise to the injury." Under Section 2859, the statute of limitations "is tolled from the date upon which the notice of claim is served or filed in Superior Court until 30 days following the day upon which the claimant receives notice of the findings of the panel." Taken together these provisions provide that i) a notice of claim must be filed to commence an action within the 3-year limitation period, ii) filing that notice tolls the limitation period until 30 days after the panel review has been completed, and iii) a plaintiff is barred from commencing an action in court until the statute of limitations begins to run again after tolling. Accordingly, this Court's decisions in *Houk* and *Hewitt* determined that the pre-litigation provisions of the MHSA are an integral part of Maine's statute of limitations for malpractice actions. *See Houk*, 613 F. Supp. at 1027 ("The [Act's] requirement that a notice of claim be served upon a malpractice defendant within the applicable Maine period of limitations, as a prerequisite to the right to recover in a court action, renders the notice-of-claim requirement . . . an integral part of the Maine statute of limitations for malpractice actions."); *Hewitt*, 39 F. Supp. 2d at 87 (applying the holding and reasoning in *Houk*).

There is no Federal Rule that displaces the state law here. Federal Rule of Civil Procedure 3 provides that "[a] civil action is commenced by filing a complaint with the court." However, as the Supreme Court thoroughly explained in *Walker*, Rule 3 "governs the date from which various timing requirements of the Federal Rules begin to run, but does not affect state statutes of limitation." *Walker*, 446 U.S. at 751. In her concurrence in *Berk*, Justice Jackson expressly recognized and highlighted the contrast in the relationship between the state rule and Federal Rule in *Walker* versus the one in issue in *Berk*. *Berk*, 607 U.S. at 205. She explained that, unlike the rules at issue in *Walker*, the state statute and Federal Rule at issue in *Berk* "serve[d] precisely the same function, in the same context: Both establish when a malpractice lawsuit is

deemed initiated (i.e., filed and docketed) for purposes of determining "the date from which various timing requirements of the Federal Rules begin to run." *Id.* Conversely, as explained above, this Court has analogized MHSA's compliance with prelitigation mandates to the service-of-summons requirements in *Walker*, which the Supreme Court expressly held were not displaced by Federal Rule 3. *Houk*, 613 F. Supp. at 1027; *Hewitt*, 39 F. Supp. 2d at 87; *Walker*, 446 U.S. at 750-52. Because there is no conflict with a Federal Rule, this Court is "obligated to apply state law." *Daigle*, 14 F.3d at 689 ("Authoritative case law makes clear that federal courts sitting in diversity are obligated to apply state law unless applicable federal procedural rules are sufficiently broad to control a particular issue before the court."); *see also Walker*, 446 U.S. at 752-53 (explaining that the "policies behind *Erie* and *Ragan* control the issue" when there is no Federal Rule on point).[3]

The Supreme Court did not address or overrule *Walker* in its decision in *Berk*, and thus *Walker* remains good law and binding precedent, to be read with *Berk* in exemplifying the limits of the *Berk* holding under the same *Erie* and Rules Enabling Act analysis that has not changed. The prelitigation panel system of the MHSA is an integral part of the statute of limitations for medical malpractice actions in Maine, and there is no Federal Rule that displaces the requirements. Any refusal to apply the requirements in diversity cases "would produce an

[3] For example, in *Barnickle v. Mather Hosp.*, No. 24-CV-6953-SJB-LGD, 2026 U.S. Dist. LEXIS 22297 (E.D.N.Y. Feb. 3, 2026), the court, sitting in diversity jurisdiction, applied New York law which required that an action be commenced by filing both a summons and a complaint. *Id.* at 12-14. In that case, plaintiff filed a complaint on the last day of the limitations period but did not file the summons until two months later. *Id.* at 2, 4. The court first considered whether the Federal Rule displaces state law. *Id.* at 7 (citing *Berk*, 607 U.S. at 192). Relying on *Walker*, the court determined that there was "no direct collision between a Federal Rule and state law, because [Federal Rule 3] does not 'answer the same question' presented: when does an action commence for statute of limitations purposes?" *Id.* at 8. Having determined there was no Federal Rule on point, the court applied the polices behind *Erie* and *Ragan* as required by *Walker*. *Id.* at 7-8. The court determined that "the *Erie* framework applicable when a federal rule is not in conflict with state law, and *Ragan* and *Walker*, . . . compel the conclusion here: compliance with Rule 3 means only that [plaintiff] 'commenced' an action *in* federal court, not that he 'commenced' it *under* state law." *Id.* at 11 (emphasis in original).

inequitable administration of Maine law as between resident and nonresident plaintiffs in malpractice actions." *Houk*, 613 F. Supp. at 1027; *see also Hewitt*, 39 F. Supp. 2d at 87; *Henderson*, 815 F. Supp. 2d at 381 n. 23 (reaffirming that "the MHSA applies to medical malpractice claims filed in federal court on the basis of diversity").

Because the prelitigation panel mandates of the MHSA apply in cases filed in federal court under diversity jurisdiction, and because Plaintiffs have failed to comply with them here, Plaintiffs' complaint must be dismissed. Furthermore, it must be dismissed with prejudice because the statute of limitations has expired, and, as a statute of repose, the limitations period is not subject to equitable tolling, and Plaintiffs' claims are now time-barred.[4]

## II. This Court should abstain from exercising jurisdiction under the doctrine of *Burford* abstention.

While federal courts have "virtually unflagging obligation to exercise the jurisdiction given them," *see Chico Serv. Station, Inc. v. Sol P.R. Ltd.*, 633 F.3d 20, 29 (1st Cir.2011), the several branches of the doctrine of federal abstention provide important exceptions. *Gideon Asen LLC*, 583 F. Supp. 3d at 249-51 (abstaining from federal question jurisdiction to decide an issue on the scope of the MHSA's confidentiality rules, under *Pullman* and *Younger* branches of abstention);

[4] The Maine Law Court has affirmatively recognized that 24 M.R.S. § 2902 is a statute of repose. *See Choroszy v. Tso*, 647 A.2d 803, 808 (Me. 1994). A statute of repose is a "statute barring any suit that is brought after a specified time since the defendant acted . . . ," *Baker v. Farrand*, 2011 ME 91, ¶ 16 n.4, 26 A.3d 806, 812 (internal quotation omitted), and is the "substantive law of the state," *Wood v.United States*, No. 1:14-cv-00399-JDL, 2016 U.S. Dist. LEXIS 13689, at *16-17 (D. Me. Feb. 2, 2016). As a statute of repose, 24 M.R.S. § 2902 "reflects the legislative objective to give a defendant a complete defense to any suit after a certain period." *State v. Tucci*, 2019 ME 51, ¶ 13, 206 A.3d 891, 896 (citing *Cal. Pub. Emps.' Ret. Sys. v. ANZ Sec., Inc.*, 582 U.S. 497, 505 (2017). Moreover, the Maine Law Court has consistently recognized that a statute of repose cannot be avoided by considerations of equity. *See Dasha by Dasha v. Me. Med. Ctr.*, 665 A.2d 993, 996 (Me. 1995) ("The Legislature has explicitly outlined the contours of the statute of limitations in medical malpractice actions, and has not left room for us to carve out an exception to these rules."); *Tucci*, 2019 ME 51, ¶ 15, 206 A.3d 891, 896 (holding that a statue of repose "displaces [the court's] general power to apply equitable doctrines to prevent a defendant from asserting [it] as a defense"); *see also Wood*, 2016 U.S. Dist. LEXIS 13689, at *24 ("Statutes of repose are not subject to equitable tolling as are statutes of limitations."). Thus, the three year statute of repose in Section 2902 can only be tolled as provided for by the provisions of the MHSA. *See* 24 M.R.S. §§ 2902, 2903(2), 2859.

*Kilroy v. Mayhew*, 841 F. Supp. 2d 414, 419-24 (D. Me. 2012) (abstaining under *Burford* abstention to decide issues of state administration of federal Supplemental Nutrition Assistance Program).

In this case, in the alternative in the event the Court does not dismiss the case for failure to comply with the MHSA under the above arguments, the court should abstain under the *Burford* abstention doctrine from exercising diversity jurisdiction over a claim that is without dispute within the scope of the MHSA. *Burford v. Sun Oil Co.,* 319 U.S. 315. Although federal court abstention is reserved for "exceptional circumstances," if this case is not dismissed for failure to comply with the MHSA, it presents truly exceptional circumstances. "[F]ederal district courts may decline to exercise jurisdiction 'where denying a federal forum would clearly serve an important countervailing interest, such as regard for federal-state relations or wise judicial administration.' " *Kilroy*, 841 F. Supp. 2d at 419 (citing *Chico*, 633 F.3d at 29 (quoting *Quackenbush v. Allstate Ins. Co.,* 517 U.S. 706, 716 (1996)).

Here, "regard for federal-state relations" and "wise judicial administration" counsel in favor of abstention. *Id.* The exercise of diversity jurisdiction here could potentially excise a large set of state law claims clearly covered by the MHSA on their face, leaving them to a separate federal forum that bypasses the MHSA completely, disregarding all MHSA rights and responsibilities; and this excision would be based solely on the "accidents of residence" of diversity jurisdiction.[5] The exercise of federal jurisdiction undermines the state's administration of justice by undermining the MHSA's comprehensive scheme of administrative rights and

[5] *Burford*, 319 U.S. at 318 n. 5 (quoting *Hawks v. Hamill*, 288 U.S. 52, 61 (1933) ("Reluctance there has been to use the process of federal courts in restraint of state officials though the rights asserted by the complainants are strictly federal in origin. . . . There must be reluctance even greater when the rights are strictly local; **jurisdiction having no other basis than the accidents of residence**.")) (bold emphasis added) (internal citation omitted).

obligations – a state legislative scheme intended by the Maine Legislature to "fully occupy the field" of claims brought against Maine health care providers, *Brand*, 697 A.2d at 847, and a system that has been in place for almost 50 years, and for over 40 years in its present iteration.[6] *Berk*, *supra*, does not address the question of federal abstention, because the Delaware procedure in *Berk* requiring submission of an expert affidavit to accompany complaint allegations is, as argued above, a far cry from Maine's comprehensive state administrative system with a prelitigation panel that is set up "as an agency of the [state] court." *Hill*, 2009 ME 4, ¶ 12, 962 A.2d at 967. *Burford* abstention provides the basis for this Court to exercise a modicum of "caution" and "reluctance" [*Burford*, 319 U.S. at 318 n. 5; *Hawks*, 288 U.S. at 61] before displacing and ignoring entirely a statutory state system of administration over a statutorily-defined set of state claims governed by state law, operating under the auspices of the state court. 24 M.R.S. §§ 2852 § 2851(2).

"[T]he fundamental concern of the *Burford* doctrine is 'to prevent federal courts from bypassing a state administrative scheme and resolving issues of state law and policy that are committed in the first instance to expert administrative resolution.'" *Kilroy*, 841 F. Supp at 419 (quoting in part *Chico*, 633 F.3d at 29). Under *Burford*, "[w]here timely and adequate state-court review is available, a federal court sitting in equity must decline to interfere with the proceedings or orders of state administrative agencies: (1) when there are 'difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar'; or (2) where the 'exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern.'" *Kilroy*, 841 F. Supp. 2d at 420 (citing *Chico*, 633 F.3d at

[6] *See* 24 M.R.S. §§ 2501 et seq., P.L. 1977, c. 492; 24 M.R.S. §§ 2851 et seq., P.L. 1985, c. 804.

29 (quoting *New Orleans Pub. Serv., Inc. v. Council of New Orleans*, 491 U.S. 350, 361 (1989)). The First Circuit enumerates the three factors as follows: "(1) the availability of timely and adequate state-court review, (2) the potential that federal court jurisdiction over the suit will interfere with state administrative policymaking, and (3) whether conflict with state proceedings can be avoided by careful management of the federal case." *Id.* at 421 (quoting *Chico*, 633 F.3d at 32).

Each of these considerations applies in this case to warrant federal court abstention.

1. Availability of State-Court Review

The threshold inquiry on whether there is a "timely and adequate" state court review available is clearly met in this case, and indeed is the central point: the MHSA provides people three years under the statute of limitations, plus a tolling period under the prelitigation panel system under § 2859 of the MHSA, to present their claim against Maine health care providers for panel hearing. This inquiry is not one that looks at whether there is availability of state court review now, at the time of this writing, for these particular Plaintiffs – for we know that the statute of limitations on the Plaintiffs' claims has now passed. *Kilroy*, 841 F. Supp. 2d at 421. The inquiry is simply whether Plaintiffs would have been able to invoke state court review, and there is no question they had that right in this case. As the Court found in *Kilroy*, "[i]nstead of filing this action, Plaintiff could have appealed his food assistance benefits determination to the state Superior Court, and, if unsuccessful there, to the Law Court. The Court concludes that Plaintiff's effort to circumvent this timely and adequate state court procedure triggers a fundamental concern of *Burford* abstention—specifically, having the district court become the 'regulatory decision-making center' and creating a dual review structure for adjudicating Maine regulatory actions." *Id.* So too, here: instead of filing this action, Plaintiffs could have done what

all have done before, and that is file a notice of claim under section 2853, trigger the rights and obligations (including statutory confidentiality) under MHSA, and engage in the mandatory prelitigation panel system. Plaintiffs' efforts "to circumvent" this timely and adequate system "triggers fundamental concerns of *Burford* abstention." *See id.*

2. Interference with State Policymaking

The crisis at the heart of the Maine Legislature's enactment of the MHSA should not be understated. Professional negligence and related claims against health care providers made procurement of liability insurance cost-prohibitive to providing critical levels of care in Maine. Maine had and still has a health care provider shortage, particularly acute in Maine's rural counties. The MHSA was a solution that has served to keep what many assert are already high health care costs from becoming even higher, and ultimately rendering health care in Maine cost-prohibitive to many in Maine's economy. The MHSA embodies state policymaking for the health and safety of citizens of the highest order. It stemmed from the work of the Legislature's special 1975 commission (known as the Pomeroy Commission because it was chaired by the former Maine Supreme Judicial Court Justice, Charles A. Pomeroy); evolving with legislative amendments in 1985, it has served Maine well for decades to address these policy issues. *See, generally*, *Saunders*, 2006 ME 94, ¶¶ 13-15, 902 A.2d at 834 (quoting in part *Butler v. Killoran*, 714 A.2d 129, 132-33 (Me. 1998)).

Assaults by the plaintiffs' bar on the MHSA prelitigation screening and confidentiality rights of health care providers in Maine, have on occasion been brought to the federal court in this district. In a notable recent time when that occurred, when a plaintiffs' firm challenged the constitutionality of the Maine court's adherence to the statutory mandate of confidentiality during the panel stage, this court ultimately abstained from exercising jurisdiction. *Gideon Asen*

*LLC*, 583 F. Supp. 3d at 249-51. While abstention under *Gideon Asen* was decided under the *Pullman*[7] branch of the federal abstention doctrine, it reflects this Court's reluctance to weigh in on issues under the MHSA , especially given that the MHSA prelitigation panel rights and obligations are creatures of state statute, and the prelitigation panel itself is "an agency of the [state] court." *Hill*, 2009 ME 4, ¶ 12, 962 A.2d at 967; *see* 24 M.R.S. § 2852.

And this case may indeed be characterized as an assault on the MHSA prelitigation rights and obligations. The scope of the MSHA is statutorily-defined: a "claim for professional negligence" against health care providers is defined by section 2851(2), and an "action for professional negligence" is defined by section 2502(6); sections 2502(1-A) & (2) define "health care practitioner" and "health care provider"; even "professional negligence" has a statutory definition in section 2502(7). The Maine Supreme Judicial Court reads this definition broadly, recognizing that with enactment of the MHSA the Maine Legislature intended to "fully occupy the field of claims brought against health care providers." *Brand*, 697 A.2d at 847 (quoting in part *Dutil*, 674 A.2d at 911); *see also Saunders*, 2006 ME 94, ¶ 12, 902 A.2d at 834. Yet with this present action, Plaintiffs would set precedent that excises a whole category of such claims – i.e., claims against Maine health care providers treating patients *who happen to be domiciled in other states* – from application of the MHSA. The prospective patient base in Maine includes out of state visitors, especially in summer months but certainly all year round in a state like Maine, reliant in significant degree on a tourism economy. Also, providing health care has become, in many cases, regional – so Maine residents could be treated by providers who are technically domiciled out of state, hence supporting diversity of citizenship in that circumstance; plaintiffs could then split claims even within the same course of treatment, bringing claims based on

[7] *R.R. Comm'n v. Pullman Co.*, 312 U.S. 496, 499–500 (1941).

diversity in federal court against one set of providers without any MHSA compliance. Plaintiffs here have already demonstrated the unfairness within the administration of justice were MHSA rights and obligations deemed not to apply to non-Mainers: Plaintiffs have already denigrated the statutory rights of confidentiality embedded within the MHSA, 24 M.R.S. §§ 2853(1-A) & 2857, by filing this suit with an accompanying press release, generating a media report in the Portland Press Herald, and in other media outlets, which essentially repeated Plaintiffs' untried allegations verbatim. Exhibit A.[8]

Thus, the concern triggered here is that same "animating concern under *Burford*": "the threat that federal courts will usurp the role of state administrative agencies in deciding issues of state law and policy that are committed in the first instance to expert administrative resolution." *Kilroy*, 841 F. Supp. 2d. at 420-21 (quoting *Chico*, 633 F.3d at 32). The panel chair is appointed by the Chief Justice of the Maine Supreme Judicial Court. 24 M.R.S. § 2852(2)(A). The panelists include an attorney and at least one health care practitioner. 24 M.R.S. § 2852(2)(B). The panel findings, if they are unanimous, are admissible in any subsequent court case, and have other effects on the parties' obligations such as a mandate to negotiate payment or release of the claim, depending on the results. 24 M.R.S. § 2858. The Defendants here have been deprived of the opportunity to attain and exercise these rights. Exercising jurisdiction here usurps the role of the state panel system of experts, including displacing the rights and obligations inherent in it, such

---

[8] Under Rule 902(6) of the Federal Rules of Evidence, the Portland Press Herald article attached as Exhibit A is self-authenticating. This court may take judicial notice of it and consider its implications on a motion to dismiss under Rule 12(b)(6), not for the truth of the matters asserted in it of course, but as relevant on the issues of state policy of confidentiality under the MHSA implicated in this case. *United States ex rel. Winkelman v. CVS Caremark Corp.*, 827 F.3d 201, 207-208 (1st Cir. 2016) (considering "press release" and "news articles" and stating "[a]fter all, even within the Rule 12(b)(6) framework, a court may consider matters of public record and facts susceptible to judicial notice"); *see also U.S. ex rel. Hagerty v. Cyberonics, Inc.*, 95 F. Supp. 3d 240, 256 (D. Mass. 2015) (considering implications of news articles on 12(b)(6) motion to dismiss because news articles were susceptible to judicial notice). Exhibit A is the Portland Press Herald article. Similar publications appeared in Maine Public and in a trade publication, Radiology Business, on May 20, 2026; and in a post on Plaintiffs' firm's website.

as rights arising from the effects of panel findings and from the overarching confidentiality of the panel hearing system. Embedded in each of these rights are the balanced state policies that supported enactment of the MHSA.

3. Likelihood of Conflict with State Proceeding

As noted above, by bypassing altogether the Maine panel system and its inherent rights and obligations, conflicts will occur between state and federal adjudication of claims against Maine health care providers. Some of those conflicts have already happened in this case, and are somewhat irremediable, such as for example the deprivation of Defendants' rights to confidentiality until the merits of the statutorily-defined state claim are presented and heard by a prelitigation agency of the state court. Plaintiffs caused the allegations of their case to be published in the local newspaper (Exhibit A), as noted above, a publicity event that all other Maine health care providers are protected from by statute during the panel phase. 24 M.R.S. §§ 2853(1-A) & 2857. So, in theory, if Plaintiffs have such a good case, they have deprived the Defendants of the statutory right to resolve it after evaluation presuit within a scope of confidentiality. Conversely, Plaintiffs may have avoided unanimous adverse panel findings against them, which means they can present a case to a Maine jury in federal court without the jury ever knowing of adverse expert panel findings against them – a significant sidestepping of Maine law governing their certain kind of state claim. 24 M.R.S. § 2858. In addition, Plaintiffs imply in their allegations that they do not know for sure whether both or either of the two entity-defendants might be held vicariously liable. *See* Compl., Doc. 1 ¶¶ 4-5. A *confidential* notice of claim and prelitigation panel hearing system affords the Defendants the right to address those kinds of issues *confidentially* with claimants and their counsel, where no basis for naming them in a lawsuit exists in the first instance. 24 M.R.S. §§ 2853(1-A) & 2857.

The standard of this third inquiry is that "a federal court may abstain only where conflict with state administrative processes cannot be avoided through careful conduct of the federal case." *Kilroy*, 841 F. Supp. 2d at 423. The key distinction is whether federal court jurisdiction would "disrupt the state agency's 'role as the regulatory decision-maker or interfere with the agency's ability to apply its expertise to local facts in establishing a coherent state policy.' " *Id.* (quoting and discussing *Vaqueria Tres Monjitas, Inc. v. Irizarry*, 587 F.3d 464, 474 (1st Cir. 2009)). Here, the disruption is to the "coherence" of the MHSA policies and system, and precisely what this Court has identified as the creation of an untenable and "inequitable administration of Maine law as between resident and nonresident plaintiffs in malpractice actions." *Hewett*, 39 F. Supp. 2d at 87 (quoting *Houk*, 613 F. Supp. at 1027). The MHSA panel system, and the responding Maine health care providers inherent rights in the MHSA and their reliance on it, will be disrupted because certain cases will be deprived of a state court agency's [i.e., the panel's] ability to apply its expertise to local facts, and to do so during a statutorily-prescribed period of confidentiality. The only way to really remedy the disruption would be to require all cases to invoke the MHSA as the statute intends, allowing the MHSA to "fully occupy the field" for what it covers, as this Court has previously ruled. In the end, Plaintiffs should not be rewarded by unilaterally ignoring wholescale a statutory scheme that has been in place for decades, that parties and counsel are all well aware of, and that impacts significant state policies relating health care generally and the rights of the Defendants in particular.

Thus, this case presents an appropriate albeit exceptional circumstance for abstention, where the "questions of regulation of the industry by the State administrative agency [i.e., regulation of claims against Maine health care providers]. . . so clearly involves basic problems of [state] policy that equitable discretion should be exercised to give the [state] courts the first

opportunity to consider them." *Burford*, 319 U.S. at 332. Prelitigation panels are state court agencies. *Hill*, 2009 ME 4, ¶ 12, 962 A.2d at 967. The Supreme Court in *Burford* concluded that "[u]nder such circumstances, a sound respect for the independence of state action requires the federal equity court to stay its hand." *Id.* at 334. The *Berk* decision, upon which Plaintiffs rely here to jump to federal court without invoking the MHSA, does not address federal abstention, nor could it have under the facts of that case arising out of Delaware.

In the event that this Court does not dismiss this action for failure to comply with the MHSA, we urge the Court to abstain from exercising diversity jurisdiction under the doctrine of *Burford* abstention, and so dismiss on this basis.

## CONCLUSION

For the foregoing reasons, Defendants MaineHealth, Eric J. Sax, M.D., and Spectrum Healthcare Partners, P.A. respectively request that the Court dismiss Plaintiff's Complaint against them.

DATED at Portland, Maine, July 6th, 2026.

/s/ Russell B. Pierce, Jr.
Devin W. Deane, Esq. Bar No. 5080
Russell B. Pierce, Esq. Bar No. 7322
*Attorney for Defendant MaineHealth*

Normand, Hanson & DeTroy, LLC
220 Middle Street
P.O. Box 4600
Portland, ME 04112-4600
(207) 774-7000

/s/ Kyla T. Smet
Robert P. Hayes, Esq. Bar No. 5096
Kyla T. Smet, Esq. Bar No. 10699
*Attorneys for Defendants Eric J. Sax, M.D.*
*and Spectrum Healthcare Partners, P.A.*

DRUMMOND WOODSUM
84 Marginal Way, Suite 600
Portland, ME 04101-2480
(207) 772-1941
rhayes@dwmlaw.com
ksmet@dwmlaw.com

**CERTIFICATE OF SERVICE**

I hereby certify that on July 6, 2026, I electronically filed the attached Defendants MaineHealth, Eric J. Sax, M.D., and Spectrum Healthcare Partners, P.A.'s Joint Motion to Dismiss with the Clerk of Court using the CM/ECF system which will send notification of such filing to all counsel of record.

/s/ Russell B. Pierce, Jr.

Russell B. Pierce, Esq. Bar No. 7322
*Attorney for Defendant MaineHealth*

Normand, Hanson & DeTroy, LLC
220 Middle Street
P.O. Box 4600
Portland, ME 04112-4600
(207) 774-7000